IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 16, 2007 Session

**BARBARA A. MEIER v. JAMES W. MEIER**

**Appeal from the Family Court for Rhea County
No. 22495  James W. McKenzie, Judge**

---

**No. E2006-2490-COA-R3-CV  - FILED OCTOBER 30, 2007**

---

This is a post-divorce proceeding in which James W. Meier ("Husband") filed a motion to amend the final decree pursuant to Tenn. R. Civ. P. 60.  The trial court denied the motion.  Husband appeals, contending, in part, that the trial court "committed reversible error" when it signed a judgment by consent when it knew that he did not agree to the terms of the proposed judgment.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, C.J., and SHARON G. LEE, J., joined.

John P. Konvalinka, Steven W. Grant, and Jillyn M. Pullara, Chattanooga, Tennessee, for the appellant, James W. Meier.

Carol Ann Barron, Dayton, Tennessee, for the appellee, Barbara A. Meier.

**OPINION**

**I.**

On February 11, 2004, the trial court entered a "Final Decree," which recites, in part, that the parties appeared in court on September 29, 2003, and "announced in open court that they had reached an agreement involving the division of marital property, the division of marital debt and the request for alimony."  In addition to granting a divorce to Barbara A. Meier ("Wife") and Husband, the court's judgment addressed other matters including the following:

> The real estate owned by the parties shall be conveyed to the son of
> the parties, Todd Meier.  He shall pay to [Wife] a sum which shall be

equal to one half of the amount ultimately paid to the Internal Revenue Service on an unresolved debt owed by the parties. This money will be paid in monthly installments of FIVE HUNDRED DOLLARS even until such time as the debt to the Internal Revenue Service is resolved in its entirety at which time the real estate will be refinanced and paid in full.

(Capitalization in original). The judgment reflects the signatures of the trial judge, Wife, her attorney, and the attorney for Husband. Diagonally across a signature line, under which is typed the name of Husband, are the words "Refused to Sign" in longhand.

On November 23, 2004, some nine months after the entry of the trial court's judgment of divorce, Husband filed his Tenn. R. Civ. P. 60 motion claiming that the parties' understanding with respect to their real estate was incorrectly stated in the trial court's judgment. Following a hearing, on May 15, 2006, the court entered an order on October 17, 2006, denying Husband's motion. This appeal followed.

II.

The issues presented for review by Husband are as follows:

> 1. Whether the trial court committed reversible error by signing a final judgment of divorce when the trial court clearly knew that the appellant did not agree to the terms of the consent judgment and without a signed marital dissolution agreement.
>
> 2. Whether the trial court exceeded its authority by ordering a nonparty to make payments to protect marital property.

For the reasons stated herein, we cannot reach Husband's issues.

III.

The instant controversy began when Husband filed a one-page pleading labeled "Motion to Amend Final Decree." In the body of the pleading, Husband stated the gravamen of his motion and the relief requested:

> James W. Meier . . . moves the Court for an Order Modifying the Final Judgment in the above-referenced matter. The Defendant would show that the Final Decree does not reflect the agreement by and between the parties. Specifically, Todd Meier was to pay James W. Meier Fifty Thousand Dollars ($50,000.00) upon the transfer of the parties' real estate to Todd Meier.

2

The motion was never amended. It formed the basis of Husband's claim when this matter was heard by the trial court on May 15, 2006. As can be seen, the thrust of Husband's complaint was that there had been an agreement between him and his wife, but that an important, to him, part of that agreement had been omitted from the trial court's judgment. He was asking the trial court to modify the judgment to add the "omitted" part.

At the hearing on May 15, 2006, counsel for Husband stated his client's position at the outset:

> MR. GRANT: As you heard earlier today, the only issue we really have with respect to the final decree is the disposition of the marital property.
>
> Again, Ms. Barron referred to the fact that before the parties were divorced and were involved in this divorce, they were getting ready to lose the marital home. So, their son, Todd Meier, used his credit to obtain a loan to help his mom and dad out on the mortgage, and that was a $76,000 loan in that case.
>
> What we have issue here in the final decree is it deals with only one-half of the equity in the house, right? This house is worth approximately $165,000, and under Paragraph 2 it says, the real estate owned by the parties shall be conveyed to the son of the parties, Todd Meier. And it says, he shall pay [Wife] a sum which shall equal one-half of the equity to his mom — to Mom, right? The remainder of this paragraph does not address what happens to the second half of the equity in the home, and if you deduct the $76,000 from the $165,000 —
>
> * * *
>
> MR. GRANT: About — at the time, about [$37,000 was owed to the IRS]. It's about 40-something now, 40 — 45,000, right? But you have $89,000 worth of equity above the debt on this house, right? The way this treats it, it is a gift to the son, because it can't be alimony, because alimony's spousal support, and it's not in this final decree that any of this represents alimony or spousal support when it's ordered to be transferred to the son. And it can't be property settlement, because if it's a property settlement, property settlement goes to the wife. Any disposition to the son is a gift under state law, liable to state gift tax of 6 percent, right? So, it's got to be against public policy if it's a transfer avoiding state transfer tax.

3

Now, I think the other party in this case is going to say, well, this was a deal worked out with the son. He takes out the loan, and Mr. James Meier — I may call him Jim, he goes by Jim — agreed to give his son over $50,000 worth of equity as a result of that loan. [Husband is] here today to testify that that's not the case, Your Honor.

Husband, his son, and Husband's attorney at the time of the entry of the trial court's divorce judgment,[1] were the witnesses at the hearing. Both the attorney and Husband's son disputed Husband's contention that, as stated in Husband's motion, "Todd Meier was to pay James W. Meier Fifty Thousand Dollars ($50,000.00) upon the transfer of the parties' real estate to Todd Meier."

Husband gave extensive testimony regarding the former marital residence and the interactions involving himself, Wife, their son, and the attorneys who represented the parties in the divorce, leading up to the entry of the divorce judgment. Husband testified that the judgment erroneously failed to include a provision of the parties' agreement requiring his son to pay Husband for his interest in the property. Husband's testimony was consistent with the allegations of his motion. Regarding why he did not sign the proposed judgment, the following exchange occurred:

Q. And after this — after you saw a copy of this final decree and refused to sign it — why did you refuse to sign that document?

A. Because it was not accurate.

Q. Why was it not accurate?

A. Because it did not stipulate in there that I was supposed to get paid right after the house was refinanced.

Q. Paid from whom?

A. From my son, Todd.

During the hearing, the court made the following observation:

THE COURT: All right, folks, Let's put it this way. What I'm finding today is that the agreement between the parties were [sic] that Todd Meier was going to refinance the property and ultimately receive the property as his, clear and free, because according to the depositions, according to [Husband's former attorney] Ms. Hicks'

---

[1]Husband's appellate attorney was not involved in this matter at or prior to the entry of the trial court's final judgment.

4

> testimony, according to Mr. Todd Meier's testimony is, it was their both intentions that their son would ultimately get the property.

As previously noted, the trial court denied Husband's Tenn. R. Civ. P. 60 motion to amend the final judgment.

In his brief on appeal, Husband has changed his theory of the case. He now seeks not to amend the judgment but rather to set it aside. He claims that the trial court erred in entering a consent judgment after it became aware that Husband had withdrawn his consent. He relies upon the decision of the Supreme Court in the case of ***Harbour v. Brown for Ulrich***, 732 S.W.2d 598 (Tenn. 1987), in which the High Court held that "a valid consent judgment can not [sic] be entered by a court when one party withdraws his consent and this fact is communicated to the court prior to entry of the judgment." *Id*. at 599.

Husband's motion sought only to *amend* the judgment. This was the thrust of his position and testimony at the hearing. There was no mention of the ***Harbour*** case or its progeny. Husband now seeks to *set aside* the judgment based upon the principle enunciated in ***Harbour***. He went from affirming there was an agreement that needed to be modified to arguing that there was no agreement at the time the proposed judgment was submitted to and entered by the trial court. "It is well settled in this state that a party on appeal will not be permitted to depart from the theory on which the case was tried in the lower court. Issues not raised or complained of in the trial court will not be considered on appeal." ***Tamco Supply v. Pollard***, 37 S.W.3d 905, 909 (Tenn. Ct. App. 2000). *See also* ***Kelley v. Middle Tenn. Emerg. Physicians, P.C.***, 133 S.W.3d 587, 598 (Tenn. 2004). The issue now being raised by Husband, was never asserted or pursued by him before the trial court. He cannot raise this issue for the first time on appeal. *Id*. Accordingly, Husband's first issue is found adverse to him.

## IV.

In his second issue, Husband argues that "the trial court exceed[ed] its authority by ordering a nonparty to make payments to protect marital property." This issue was also not raised below; but even if it had been, it would have been of no benefit to Husband. We recognize that a court is without authority to bind a nonparty. *See* ***Reymann v. Reymann***, 919 S.W.2d 615, 618 (Tenn. Ct. App. 1995). Thus, the decree in question pertaining to the parties' son is not legally binding on him. It is nothing more than an acknowledgment between the named parties. As to the named parties, this error was clearly harmless. *See* Tenn. R. App. P. 36. Husband's second issue is also found to be without merit.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant James W. Meier. This case is remanded to the trial court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE